**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| KENNETH MARTIN, | ) |
| | ) Civil Action No. 25-02339 |
| Plaintiff, | ) |
| v. | ) Judge: William J. Crain |
| | ) |
| PARISH OF JEFFERSON and HAROLD | ) Mag. Judge: Karen Wells Roby |
| BUHLER, | ) |
| | ) |
| Defendants. | ) Jury Trial Demanded |
| | ) |

## AMENDED COMPLAINT

NOW COMES Plaintiff, Kenneth Martin, by and through undersigned counsel, who files this Amended Complaint against the Parish of Jefferson and Harold Buhler (hereinafter referred to as "Defendants"). In support, he states the following:

## I.    INTRODUCTION

1.    This case concerns the violation of Mr. Martin's rights under the First and Fourteenth Amendments of the United States Constitution. Specifically, after Mr. Martin exercised his First Amendment right to free speech, Defendants banned Mr. Martin from entering any Jefferson Parish Recreation Department facilities.

2.    Mr. Martin was first subject to this mistreatment by the head of the Jefferson Parish Parks & Recreation Director, Mr. Harold Buhler, who established the indefinite ban in written correspondence dated September 24, 2025.

3.    Mr. Martin then raised the issue of his banishment to the Jefferson Parish Council—the ultimate decision marker for the Parish of Jefferson—via a presentation at a Jefferson Parish Council meeting.

4.    Despite Mr. Martin's presentation, the Jefferson Parish Council, on behalf of the

1

Parish of Jefferson, opted to leave the ban in place. As such, the Parish of Jefferson is sued by Mr. Martin for injunctive and declaratory relief, damages, and attorneys fees/costs under a *Monell* theory of liability.

5.      Mr. Martin sues Mr. Buhler, in his official capacity, under 42 U.S.C § 1983 for violation of his First and Fourteenth Amendment rights. Additionally, Mr. Martin sues the Parish of Jefferson under 42 U.S.C § 1983 under a *Monell* theory of liability.

## II.   <u>JURISDICTION AND VENUE</u>

6.      Mr. Martin's claims against Defendants arise under federal civil rights law. This Court has jurisdiction over Mr. Martin's claims of federal rights claim under 42 U.S.C § 1983, which is enforceable in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

7.      The venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to these claims occurred in Jefferson Parish, which is situated in the Eastern District of Louisiana.

## III.   <u>THE PARTIES</u>

8.      Mr. Martin is an individual residing in Jefferson Parish, Louisiana. He is above the age of majority and is of sound mind.

9.      The Parish of Jefferson is a local Louisiana governmental entity. The Parish of Jefferson's chief decision maker is the Jefferson Parish Council. The Parish of Jefferson operates the Jefferson Parish Recreation Department and employs defendant Harold Buhler.

10.      Mr. Buhler is an employee of the Parish of Jefferson. Mr. Buhler is the Director of the Jefferson Parish Parks & Recreation Department.

## IV.   <u>FACTS</u>

11.      The Parish of Jefferson, Jefferson Parish Parks & Recreation Department ("JPRD"), owns and operates various public parks, gyms, and other recreational facilities and

programs for residents and visitors of Jefferson Parish.

12.     Mr. Martin is a lifelong resident of Jefferson Parish and has participated in sporting activities in Jefferson Parish for years.

13.     Since approximately 2015, Mr. Martin has served as a volunteer youth basketball coach at various JPRD facilities, including coaching a team at Lemon Playground to an undefeated season in 2017.

14.     Mr. Martin has two sons who participate in Jefferson Parish basketball programs. Both children have received recognition through the Jefferson Parish Biddy Basketball program.

15.     Through his involvement with JPRD programs, Mr. Martin has coached numerous youth basketball players, including several who have subsequently played collegiate basketball.

16.     Mr. Martin regularly utilized JPRD facilities to engage in community activities, including mentoring youth participants and assisting families in connecting with educational and support resources.

17.     Mr. Martin utilizes the JPRD facilities and programs to interact with his children, other community members, and members of JPRD staff, to foster community interaction and integration, and to express his views, opinions, and concerns.

18.     Over time, Mr. Martin developed concerns about possible prejudice and/or racism within the JPRD. Specifically, Mr. Martin believed that insufficient resources were being allocated to historically African American gyms, especially the Lemon Playground.

19.     In December of 2024, Mr. Martin sent Mr. Buhler an email in which he alleged that there was "growing racial division," heightened racial tensions, and he alleged that a new rule was enacted to discourage and suppress his son's talent and give the opposing teams an advantage.

20.     Around the same time, Mr. Martin sent a similar text message to Mr. Buhler.

3

21.     In March of 2025, Mr. Martin sent text messages to Mr. Buhler with concern regarding signs that were posted at the Little Farms gym. Mr. Martin believe that the signs were evidence of "continued racism."

22.     Mr. Buhler's wrote back to express his disagreement with Mr. Martin's interpretation of the signs.

23.     In July of 2025, while discussing the enrollment numbers at one of the facilities, Mr. Martin again expressed his belief that there was a lack of equal opportunities and unjust treatment of minorities.

24.     On or about August 13, 2025, Mr. Martin and Mr. Buhler had a telephone call to discuss logistics, coaching, and other issues. During that call, Mr. Martin expressed his concerns regarding some JPRD employees and coaches.

25.     In response, on August 14, Mr. Buhler wrote to Mr. Martin and said, among other things, "Yesterday on our call and on a previous call you have insulted JPRD employees, coaches and rules. This is not acceptable and will not be tolerated. These are hard working people who have dedicates their lives to kids and JPRD."

26.     That same day, Mr. Martin responded in writing by stating that he was being singled out and had been subjected to discriminatory treatment.

27.     Mr. Martin received no response.

28.     Throughout August and September, Mr. Martin sent several more text messages to Mr. Buhler. Mr. Martin received no response.

29.     On September 15, Mr. Martin sent an email in which he re-iterated his concern about discrimination. In this email, Mr. Martin also alleged that inappropriate touching and contact had occurred to children in JPRD programs and facilities.

4

30. To summarize: Over a period of months, Mr. Martin made his dissatisfaction known concerning racial discrimination, unequal treatment, and other perceived injustices within the JPRD through various communications to Mr. Buhler and other JPRD employees. These communications, which addressed matters of public concern including allegations of racial discrimination, unequal opportunities for children, and concerns about child safety, clearly constitute speech protected by the First Amendment to the United States Constitution.

<u>Mr. Martin is Banned From JPRD Facilities, Events, and Programs</u>

31. Mr. Martin was hoping to resolve his concerns via meetings, dialogue, or other efforts.

32. Defendants acted to silence Mr. Martin.

33. On September 24, 2025, a mere nine (9) days after Mr. Martin sent certain Jefferson Parish City Council members an email alleging discrimination and other misconduct within the JPRD, Mr. Buhler sent Mr. Martin correspondence which banned him from all JPRD facilities or events, indefinitely.

34. Mr. Buhler's stated pretext for banning Mr. Martin from all JPRD facilities was that Mr. Buhler claimed that Mr. Martin of "using" an incorrect address when participating in JPRD programs. Mr. Buhler stated that this use of an incorrect address constituted a "falsification of documents," was a "serious violation of our policies," and was a "form of cheating."

35. Because of this alleged infraction, Mr. Buhler stated that, effectively immediately,

- "Your family's eligibility to participate in the JPRD program is revoked.
- You are prohibited from entering any JPRD facilities or participating in JPRD-sanctioned events at offsite facilities.
- This prohibition is indefinite, effective as of the date of this letter."

36. The letter was sent on official JPRD letterhead and was signed by Mr. Buhler as

"Recreation Director" of the JPRD.

37.    The correspondence did not provide Mr. Martin with an opportunity to appeal or contest the ban on himself and his family.

38.    Prior to receiving said correspondence, Mr. Martin did not receive notice of an impending decision regarding his alleged provision of an incorrect address.

39.    Upon information and belief, Mr. Buhler banned Mr. Martin as retaliation for Mr. Martin's protected First Amendment speech.

40.    Upon information and belief, Mr. Buhler banned Mr. Martin so that he would be unable to relay his views concerning discrimination and sexual misconduct to employees and participants of the JPRD.

41.    Upon information and belief, Mr. Buhler's stated reason for banning Mr. Martin— his provision of an incorrect address—was a pretext for the actual purpose in banning Mr. Martin.

42.    Unbeknownst to Mr. Martin when he filed his original Complaint—but as he has since learned—on September 24, 2025, Mr. Buhler sent a group message to nine people stating that Mr. Martin was banned from JPRD facilities and that law enforcement was to be called if he were to remain at a JPRD facilities.

<u>The Jefferson Parish Council Ratifies the Ban Imposed by Mr. Buhler</u>

43.    On September 26, 2025, Mr. Martin, through attorney Peter M. Meisner, sent correspondence to Mr. Buhler. In the legal correspondence, Mr. Meisner pointed out errors with Mr. Buhler's conclusion that Mr. Martin had supplied an incorrect address. Mr. Meisner went on to state that he was requesting that Mr. Buhler "immediately advise Mr. Martin in writing, through this office, of the particular facts that you purport to support the position stated in your letter and to cite any law, rule, or other provision of the JPPRD policy referred to above."

44.    Copied to the letter was Mr. Deano Bonano, Jefferson Parish Council, District Two, Ms. Jennifer VanVrancken, Councilwoman-at-Large, Div. A, Mr. Scott Walker, Councilman-at-Large, Div. B

45.    Mr. Martin received no response. The ban against Mr. Martin was not rescinded.

46.    On Thursday, October 2, 2025, Mr. Meisner sent a follow-up letter to Mr. Deano Bonano and Mr. Scott Walker concerning the impermissible ban and seeking to resolve the issue without the necessity of legal action.

47.    Mr. Martin received no response.

48.    On October 22, 2025, Mr. Martin went to a Jefferson Parish Council meeting where he made the following statement:

Thank you for letting me speak. Again, Kenneth Martin, I am resident of Jefferson Parish at 10950 Jefferson highway. I have two sons. I am requesting that the Jefferson Parish Council reverse an unlawful ban against me that was imposed by Mr. Harold Buhler. I am also requesting that my sons' eligibility to participate in the Recreation Department programs be reinstated.

On Monday, September 15, 2025, I sent an email to several Jefferson Parish employees concerning the discrimination and sexual misconduct that I believe is occurring in the Recreation Department. Specifically, I complained that Mario Bazile and Mr. Harold Buhler, the Director of the Recreation Department. I told them they are taking steps to cover up the discrimination that's been going on at the recreation playgrounds. [Councilman Scott Walker paused Mr. Martin to allow Jefferson Parish attorney, Toni Hurley, to acknowledge the matter had been referred to JPSO and investigated. She asked for names of persons involved to be omitted from the remainder of Mr. Martin's statement.] Of course, I am asking for the reinstatement of my children.

On September 23, I sent a text message to said person requesting that my children be transferred from Little Farms to Lemon gym to play basketball. The next day, September 24, 2025, I received a letter from said person claiming that I had incorrectly provided the wrong address on a form. As a punishment, said person stated that effective immediately my family's eligibility to participate in the Jefferson Parish Recreation Department program was revoked, and that I was prohibited from entering in any Jefferson Parish Recreation Department facilities, and that I was prohibited from participating in any Jefferson Parish sanctioned events at offsite facilities, and that this prohibition is indefinite.

7

Said persons' decision to ban me and my children constituted impermissible First Amendment retaliation in response to my raising of my grievance. Said persons' decision to ban me from the Jefferson Parish Recreation Department facilities indefinitely violated the due process clause of the Fourteenth Amendment of the U.S. Constitution. I previously raised these issues via my attorney and received no response. I now respectfully request that the City Council take remedial action to reverse the punishment imposed by said person on September 24, 2025. If the Jefferson Parish Council does not reverse this ban imposed by said person, I will interpret the ban to be an official policy of Jefferson Parish. Thank you for your time.

49.    After Mr. Martin finished speaking, he expected the Jefferson Parish Council to vote to rescind the ban.

50.    Instead, the Jefferson Parish Council did absolutely nothing and moved on to the next order of business.

51.    The Jefferson Parish Council did not rescind the ban.

52.    After Mr. Martin's presentation, the Jefferson Parish Council was aware that Mr. Martin was being excluded from JPRD facilities because of his protected speech. The governing body was also aware that Mr. Martin had asserted that his due process rights were being violated by an indefinite ban.

53.    Despite having authority to investigate and reverse the ban, and despite being specifically informed of the constitutional violations, the Jefferson Parish Council took no remedial action. This deliberate inaction constitutes ratification of Mr. Buhler's unconstitutional conduct.

54.    By failing to rescind the ban or take other remedial action, the Jefferson Parish Council ratified Mr. Buhler's indefinite ban against Mr. Martin.

55.    To date, Mr. Martin has received no correspondence stating that the ban has been rescinded. As such, the indefinite ban remains in place.

56.    Mr. Martin used JPRD facilities and gyms to communicate with friends and family

8

members, to play basketball with his children, to interact with members of the community, and to push for racial equality.

57. Because of the ban, Mr. Martin has been forced to avoid JPRD facilities and gyms.

58. Mr. Martin is avoiding JPRD facilities and gyms out of concern that he will be cited and arrested for trespassing.

59. Mr. Martin has been unable to engage in the free speech and expressive activities that he was able to engage in prior to the indefinite ban imposed by Defendants.

60. Mr. Martin's children have suffered as they have been unable to participate in JPPRD activities, and they are effectively banned from JPRD facilities as well since they cannot be accompanied by Mr. Martin, their father.

61. Mr. Martin has been forced to pay for a private gym membership.

62. Mr. Martin has suffered invasion of his civil rights. Due to the ban, Mr. Martin has suffered emotional distress, mental anguish, and depression.

<u>Banning Parents is Tool Used Arbitrarily by the Parish of Jefferson</u>

63. Mr. Martin is not the only parent that has been banned from JPRD facilities. However, unlike a parent who was banned for safety reasons, the ban against Mr. Martin for his speech has not been lifted.

64. On October 30, 2024, Mr. Martin was at the Little Farms Playground when a verbal alteration/dispute arose between two parents—Mr. Martin and another parent—and a coach named Albert Phillip.

65. During the argument, Mr. Phillip stated to Mr. Martin "I have something in my car for you" and he proceeded to walk to his vehicle. Mr. Martin believed Mr. Phillip to be referring to gun.

66.     An off-duty law enforcement officer instructed Mr. Phillips to leave the property. Based on a police report, a JPRD staff member named James Hodgins told Mr. Phillips that he was banned from JPRD playgrounds.

67.     Despite Mr. Phillips having been banned after threatening Mr. Martin, apparently the ban was rescinded or was not enforced.

68.     On December 4, and December 23, 2024, Mr. Martin was surprised to see Mr. Phillips at the Little Farms gym.

69.     The contrast between the Parish of Jefferson's treatment of Mr. Phillips and Mr. Martin is stark: Mr. Phillips allegedly made a threat that was reasonably interpreted as a threat of gun violence at a youth gym, yet his ban was not enforced. Mr. Martin engaged in protected speech criticizing the JPRD and alleging discrimination, and his indefinite ban remains in effect.

70.     This disparate treatment demonstrates that the stated justification for banning Mr. Martin—providing an incorrect address—is pretextual. The true motivation for the ban against Mr. Martin was retaliation for his protected speech, as evidenced by JPRD employees permitting an individual who posed a safety threat to return to JPRD facilities while maintaining an indefinite ban on Mr. Martin following his constitutionally protected criticism of JPRD.

## V.     CLAIMS FOR RELIEF

### Claim I: Violation of Mr. Martin's First Amendment Rights
### (Direct Limit and Retaliation)
### Enforced Through 42 U.S.C § 1983

71.     The First Amendment protects a significant amount of verbal criticism and challenge directed at government officials. See *Enlow v. Tishomingo County*, 962 F.2d 501, 509 (5th Cir.1992) (quoting *City of Houston v. Hill*, 482 U.S. 451, 462 (1987)).

72.     Here, Mr. Martin engaged in speech protected by the First Amendment.

73.    Following Mr. Martin's statements about JPRD employees and personnel, Mr. Buhler stated that Mr. Martin's statements were "not acceptable" and would "not be tolerated."

74.    Thereafter, Mr. Martin engaged in further speech protected by the First Amendment to express his concerns about JPRD personnel and alleged discrimination and abuse.

75.    A little more than a month after stating that Mr. Martin's speech would "not be tolerated[,]" Mr. Buhler banned Mr. Martin from all JPRD facilities or events, indefinitely.

76.    This ban was also, effectively, a ban on Mr. Martin's minor children.

77.    Upon information and belief, Mr. Buhler's ban was motivated in substantial part—or in full—by Mr. Martin's protected First Amendment speech.

78.    Upon information and belief, Mr. Buhler's ban was motivated to retaliate against Mr. Martin for expressing himself.

79.    Upon information and belief, Mr. Buhler's ban was motivated to chill Mr. Martin's speech and/or to deprive Mr. Martin of opportunities to express himself to JPPRD personnel and program participants.

80.    In this case, Mr. Martin has two theories of First Amendment violation: (1) direct limitation; and (2) retaliation.[1]

81.    **In terms of direct limitation**, Defendants banned Mr. Martin from all JPRD facilities. This directly limits Mr. Martin's speech as public parks are quintessential public forums where ideas, viewpoints, opinions, and disagreements can be exchanged, discussed, and debated.

82.    Due to the ban, Mr. Martin has been unable to visit or use JPRD facilities. Given

---

[1] *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999) ("the First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms.").

11

the ban, Mr. Martin has been unable to engage in in-person expression of his ideas, opinions, and viewpoints with members of the community and Defendants' employees at JPRD facilities.

83. **In terms of retaliation**, Mr. Martin was engaged in constitutionally protected activity, he was banned from all JPRD facilities which would chill a person of ordinary firmness from continuing to engage in that activity, and the Defendants' adverse actions were substantially motivated against Mr. Martin because he engaged in constitutionally protected conduct.

84. By and through the facts alleged above, Mr. Buhler, as an official of the Parish of Jefferson, was deliberately indifferent to Mr. Martin's First Amendment rights.

85. Mr. Buhler "disregarded a known or obvious consequence of his action." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010).

86. In fact, as to the retaliation claim, Mr. Buhler's is alleged to have acted to ban Mr. Martin *because of* his speech. Far from being alleged to have acted with deliberate indifference, Mr. Buhler is alleged to have acted intentionally.

87. Mr. Martin sues Mr. Buhler in his official capacity under 42 U.S.C § 1983 for violation of his First Amendment rights. Plaintiff seeks injunctive and declaratory relief, and attorneys fees and costs.

<em>Monell</em> Claim – Direct Through Acquiescence

88. Mr. Martin also sues the Parish of Jefferson under the *Monell* doctrine under 42 U.S.C § 1983.

89. The Jefferson Parish Council is the policymaker for the Parish of Jefferson.

90. The Jefferson Parish Council has the power to make official policy on a particular issue. Indeed, the Jefferson Parish Council has the power to make official policy or render decisions on any issues within the control of Parish of Jefferson.

91. The ban against Mr. Martin was a decision that was officially adopted and promulgated by Mr. Buhler.

92. Alternatively, the ban against Mr. Martin could be considered a "rule" or a "policy."

93. Mr. Martin was banned by the Parish of Jefferson based on his protected speech. This constitutional violation was "caused by" the decision that was promulgated and implemented by Mr. Buhler.

94. Mr. Martin was banned by the Parish of Jefferson based on his protected speech. This constitutional violation was "caused by" the "rule" or "policy" that was initially promulgated and implemented by Mr. Buhler.

95. However, the Parish of Jefferson acquiesced to the decision, rule, or policy that was initially implemented by Mr. Buhler.

96. Mr. Martin was banned by the Parish of Jefferson; this improperly restricted his access to a quintessential public forum. This constitutional violation was "caused by" the decision that was officially adopted and promulgated by Mr. Buhler.

97. Mr. Martin was banned by the Parish of Jefferson; this improperly restricted his access to a quintessential public forum. This constitutional violation was "caused by" the "rule" or "policy" that was initially promulgated and implemented by Mr. Buhler.

98. Mr. Martin was banned by the Parish of Jefferson based on his protected speech. This constitutional violation was "caused by" the decision that was initially promulgated and implemented by Mr. Buhler.

99. Mr. Martin was banned by the Parish of Jefferson based on his protected speech. This constitutional violation was "caused by" the "rule" or policy that was initially promulgated and implemented by Mr. Buhler.

13

100.    As to the Parish of Jefferson, Mr. Martin seeks damages (compensatory and nominal), injunctive and declaratory, and attorneys fees/costs.

### *Monell* Claim – Ratification

101.    At a Council meeting, Mr. Martin expressly raised the ban, he explained the speech that preceded the ban, and he explained that he was experiencing First Amendment retaliation by Mr. Buhler.

102.    Following Mr. Martin's statement, the Jefferson Parish Council had an opportunity to revoke the ban or take other remedial action.

103.    After Mr. Martin's presentation, the council members of Jefferson Parish Council each decided not to act to revoke the ban or take other remedial relief. Likewise, as a collective body, the Jefferson Parish Council did not act on Mr. Martin's request and, instead, opted to leave the ban in place.

104.    Thereby, the Parish of Jefferson, through the Jefferson Parish Council, opted to ratify the ban originally imposed by Mr. Buhler.

105.    A jury reasonably could infer that the Jefferson Parish Council ratified Mr. Buhler's retaliatory animus from its failure to revoke the ban or take other remedial action.

106.    Accordingly, Mr. Martin was banned by the Parish of Jefferson based on his protected speech.

107.    Here, the Parish of Jefferson permitted a ban against Mr. Martin to remain in place.

108.    By and through the facts alleged in the paragraphs above, the Parish of Jefferson was deliberately indifferent to Mr. Martin's First Amendment rights.

109.    The Parish of Jefferson, in choosing not to reverse the ban, disregarded a known or obvious consequence of its decision to not reverse the ban.

14

110.    As to the Parish of Jefferson, Mr. Martin seeks damages (compensatory and nominal), injunctive and declaratory, and attorneys fees/costs.

**Claim II: Violation of Mr. Martin's Fourteenth Amendment Rights**
**(Procedural Due Process)**
**Enforced Through 42 U.S.C § 1983**

111.    To prevail on a procedural due process claim, a plaintiff must show 1) that he suffered a deprivation of a constitutionally protected interest in "life, liberty, or property," and 2) that such deprivation occurred without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125–26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (citations omitted). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id*. at 125, 110 S.Ct. 975 (citation omitted).

112.    It is well established that "an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage[.]' " *City of Chicago v. Morales*, 527 U.S. 41, 54, 119 S. Ct. 1849, 1858, 144 L. Ed. 2d 67 (1999) (quoting *Kent v. Dulles*, 357 U.S. 116, 126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958).

113.    Here, Mr. Martin has a right to visit JPRD facilities, programs, and activities, both as protected First Amendment expressive activity and because of his right of freedom of movement.

114.    Mr. Martin was banned from JPRD facilities, programs, and activities, his family's eligibility to participate in JPRD programs was revoked, and the prohibitions are indefinite.

115.    The harmful nature of these prohibitions made the restrictions punitive in nature.

116.    The indefinite ban against Mr. Martin occurred without due process of law.

117. Mr. Martin was not afforded notice of a charge, evidence against him, or an opportunity to rebut said charge or evidence.

118. After the fact, Mr. Martin was not afforded any opportunity or method to appeal the decision, submit contrary evidence, or obtain reversal of the ban.

119. Mr. Martin was not afforded notice and an opportunity to be heard.

120. Mr. Martin was not afforded an opportunity to have his deprivation reviewed by the judiciary nor was he able to have counsel of his choosing cross-examine his accusers.

121. By and through the facts alleged above, Mr. Buhler, was deliberately indifferent to Mr. Martin's Fourteenth Amendment rights.

122. By and through the facts alleged above, the Parish of Jefferson was deliberately indifferent to Mr. Martin's Fourteenth Amendment rights.

123. Mr. Buhler and the Parish of Jefferson "disregarded a known or obvious consequence of his action." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010).

124. It is obvious and common knowledge that an individual has a right to a hearing when punitive action is taken against them. It is obvious and common knowledge that an individual is entitled to notice of a charge, evidence against him, or an opportunity to rebut said charge or evidence.

125. Mr. Martin sues Mr. Buhler in his official capacity under 42 U.S.C § 1983 for violation of his Fourteenth Amendment rights. Plaintiff seeks injunctive and declaratory relief, and attorneys fees and costs.

<em>Monell</em> Claim – Direct Through Acquiescence

126. Mr. Martin also sues the Parish of Jefferson under the *Monell* doctrine under 42 U.S.C § 1983.

16

127.    The Jefferson Parish Council is the policymaker for the Parish of Jefferson.

128.    The Jefferson Parish Council has the power to make official policy on a particular issue. Indeed, the Jefferson Parish Council has the power to make official policy or render decisions on any issues within the control of Parish of Jefferson.

129.    Mr. Martin was banned by the Parish of Jefferson by Mr. Buhler. This violated Mr. Martin's procedural due process rights.

130.    This constitutional violation was "caused by" the decision that was initially promulgated and implemented by Mr. Buhler.

131.    This constitutional violation was "caused by" the "rule" or "policy" that was initially promulgated and implemented by Mr. Buhler.

132.    However, the Parish of Jefferson acquiesced to the decision, rule, or policy that was initially promulgated and implemented by Mr. Buhler.

133.    As to the Parish of Jefferson, Mr. Martin seeks damages (compensatory and nominal), injunctive and declaratory, and attorneys fees/costs.

## *Monell* Claim – Ratification

134.    At the October 22nd Council meeting, Mr. Martin expressly raised the ban, he explained the speech that preceded the ban, and he explained that his due process rights had been violated.

135.    After Mr. Martin's presentation, the members of Jefferson Parish Council each decided not to act to revoke the ban or take other remedial relief. Likewise, as a collective body, the Jefferson Parish Council did not act on Mr. Martin request and, instead, opted to leave the ban in place.

136.    Thereby, the Parish of Jefferson, through the Jefferson Parish Council, opted to

17

ratify the ban originally imposed by Mr. Buhler.

137. Thus, following Mr. Martin's statement, the Jefferson Parish Council had an opportunity to revoke the ban or take other remedial action.

138. A jury reasonably could infer that the Jefferson Parish Council ratified Mr. Buhler's retaliatory animus from its failure to revoke the ban or take other remedial action.

139. The Parish of Jefferson ratified the violation of Mr. Martin's due process rights.

140. By and through the facts alleged above, the Parish of Jefferson was deliberately indifferent to Mr. Martin's Fourteenth Amendment rights.

141. It is obvious and common knowledge that an individual has a right to a hearing when punitive action is taken against them. It is obvious and common knowledge that an individual is entitled to notice of a charge, evidence against him, or an opportunity to rebut said charge or evidence.

142. Mr. Martin sues the Parish of Jefferson under the *Monell* doctrine for violation of Mr. Martin's procedural due process rights.

143. As to the Parish of Jefferson, Mr. Martin seeks damages (compensatory and nominal), injunctive and declaratory, and attorneys fees/costs.

## VI.  **DEMAND FOR JURY TRIAL**

144. Mr. Martin demands trial by jury on all issues.

## VII.  **RELIEF REQUESTED**

145. Wherefore Mr. Martin requests judgment be entered against Defendants and that the Court:

   a. Award injunctive and declaratory relief, and attorneys fees/costs, against Defendant Buhler under 42 U.S.C § 1983 for violation of Mr. Martin's First and

Fourteenth Amendment rights.

b. Award injunctive and declaratory relief, damages (compensatory and nominal) and attorneys fees/costs, against Defendant the Parish of Jefferson under 42 U.S.C § 1983 for violation of Mr. Martin's First and Fourteenth Amendment rights.

c. Order such other and further relief, at law or in equity, to which Mr. Martin may be justly entitled.

Respectfully submitted, this Friday, January 9, 2026

/s/ Garret S. DeReus

BIZER & DEREUS, LLC
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Eva M. Kalikoff (LA # 39932)
eva@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY Certify that on this January 9, 2026, the foregoing pleading was served upon all parties of record via CM/ECF filing.

/s/ Garret S. DeReus
GARRET S. DEREUS